657 A.2d 976

**INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, Appellee,**

v.

**Earl HAMPTON, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 24, 1995.

Filed April 24, 1995.

David M. Jakobi, Paoli, for appellant.

Phillip J. Meyer, Philadelphia, for appellee.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

WIEAND, Judge:

May the owner/operator of an uninsured motorcycle, who has been injured in a collision with an underinsured vehicle, recover underinsured motorist benefits under a policy issued for a commercial truck owned by his mother and licensed in Delaware? The trial court held that there was no coverage under the terms of the policy of insurance and that such coverage was not required under Pennsylvania law. After careful review, we affirm.

On May 5, 1988, Earl Hampton, Jr. was injured when the uninsured motorcycle which he owned and was operating collided with an automobile being operated by Laura Guilfoil. A claim for Hampton's injuries was settled for the limits of Guilfoil's liability coverage. Hampton then made a claim for underinsured motorist benefits under a commercial trucker's policy which had been issued to his mother, Barbara Hampton, with whom Hampton resided.[1] The policy, which had been issued in Delaware, provided coverage for a 1980 Peterbilt truck and named Barbara Hampton as the insured. The truck was licensed and registered in Delaware and leased by Barbara Hampton to Refiners Transport and Terminal Corporation. The insurance policy had been purchased by Barbara Hampton in Delaware through Refiners Transport specifically for operation of the Peterbilt truck and did not include underinsured motorist coverage. Her husband, Earl Hampton, Sr., used the truck to haul loads for Refiners Transport and often garaged the vehicle at the family's Pennsylvania residence.

The Insurance Company of the State of Pennsylvania brought an action for declaratory judgment in which it sought an adjudication that Earl Hampton, Jr., was not entitled to underinsured motorist benefits under his mother's policy of insurance. The trial court held that there was no coverage

---

1. Hampton also filed a claim for underinsured motorist benefits under a personal auto policy issued to his father. A declaratory judgment action in the federal courts resulted in a decision in favor of the insurer. See: *Nationwide Mutual Ins. Co. v. Hampton,* 935 F.2d 578 (3rd Cir.1991).

and granted summary judgment in favor of the insurer. This appeal followed.

Summary judgment may be granted where "there is no genuine issue as to any material fact and [     ] the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). See also: *Britamco Underwriters, Inc. v. Grzeskiewicz,* 433 Pa.Super. 55, 58, 639 A.2d 1208, 1209 (1994), *appeal discontinued,* 538 Pa. 639, 647 A.2d 895 (1994). When considering whether summary judgment is proper, the record must be examined in the light most favorable to the non-moving party, with all doubts resolved against the moving party. *Frain v. Keystone Ins. Co.,* 433 Pa.Super. 462, 466, 640 A.2d 1352, 1354 (1994); *Ducko v. Chrysler Motors Corp.,* 433 Pa.Super. 47, 49, 639 A.2d 1204, 1205 (1994). Summary judgment should be granted only where the right is clear and free of doubt. *Musser v. Vilsmeier Auction Co.,* 522 Pa. 367, 370, 562 A.2d 279, 280 (1989). Whether a loss is covered by a policy of insurance is a question of law which may be decided on a motion for summary judgment. *Steinbacher v. Page,* 410 Pa.Super. 586, 588, 600 A.2d 608, 609 (1991).

When interpreting a contract of insurance it is necessary to consider the intent of the parties as manifested by the language of the instrument. *St. Paul Mercury Ins. Co. v. Corbett,* 428 Pa.Super. 54, 59, 630 A.2d 28, 30 (1993) (en banc), *appeal discontinued,* 535 Pa. 658, 634 A.2d 221 (1993). Where the policy language is clear, the contract will be applied as written. *Nationwide Mutual Ins. Co. v. Cummings,* 438 Pa.Super. 586, 593, 652 A.2d 1338, 1341 (1994). However, where a provision of a contract is ambiguous, it will be construed in favor of the insured. *Britamco Underwriters, Inc. v. Weiner,* 431 Pa.Super. 276, 281, 636 A.2d 649, 651 (1994), *allocatur denied,* 540 Pa. 541, 655 A.2d 508 (1994). To determine whether a contract of insurance provides coverage, the reasonable expectations of the insured must be examined. *Frain v. Keystone Ins. Co., supra,* 433 Pa.Super. 462, 640 A.2d 1352. An insured may not complain that his or her reasonable expectations were frustrated by policy provisions and limitations which are clear and unambiguous. *Britamco Underwriters, Inc. v. Grzeskiewicz, supra,* 433 Pa.Super. at 60, 639 A.2d

at 1210. See also: *Frain v. Keystone Ins. Co., supra,* 433 Pa.Super. at 467, 640 A.2d at 1354.

■ The policy issued by the Insurance Company of the State of Pennsylvania defined the named insured in the following manner:

> The term "Named Insured" shall apply individually and only to those persons or organizations that have leased autos to the certified carrier designated on the certificate under a valid, long term lease agreement, and have accordingly been issued a certificate of insurance forming a part of the policy.

The policy defined the vehicles covered by the insurance agreement as

> autos scheduled in the certificate of insurance attached to and forming a part of this policy, and for which at the time of loss, there is a valid, long term lease existing with the designated certificated carrier covering that auto.

Under the policy, Barbara Hampton was the only named insured, and the only covered auto scheduled in the certificate of insurance was the 1980 Peterbilt truck. Barbara Hampton conceded that she never expected the policy to provide coverage for her son or to apply to his uninsured motorcycle. It is clear, therefore, that the policy issued to Barbara Hampton does not by its terms provide underinsured motorist coverage for her son while he was operating his uninsured motorcycle. Hampton argues, however, that under Pennsylvania law he is nevertheless entitled to recover underinsured motorist benefits under his mother's policy.

At the time of Hampton's accident, the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. 1701, et. seq., required uninsured and underinsured motorist benefits to be included in policies issued or delivered in the Commonwealth as follows:

> (a) No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are provided therein or

supplemental thereto in amounts equal to the bodily injury liability coverage except as provided in section 1734 (relating to request for lower or higher limits of coverage).

75 Pa.C.S. § 1731(a) (1984).

Hampton argues that, because the Peterbilt truck was frequently garaged in Pennsylvania and because certain language of the insurance policy incorporated coverage required by the state in which the truck was located, the policy held by his mother was required to include underinsured motorist benefits equal to the amount of liability coverage. Because the MVFRL defines an insured to include family members of a named insured, 75 Pa.C.S. § 1702(2)(i), he contends that he is entitled to such coverage under his mother's policy.

■ Even if we accepted Hampton's interpretation of the MVFRL and his assertion that the policy incorporates Pennsylvania law, however, there would be no coverage for Hampton's injuries. Pennsylvania law does not require insurance policies issued or delivered in other states for vehicles licensed in those states to include underinsured motorist coverage. Moreover, the terms of the policy clearly limit coverage to accidents involving the Peterbilt truck.

The language of the policy on which Hampton relies provides that:

> While a covered "auto" is away from the state where it is licensed we will:
>
> . . . .
>
> (2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

A careful examination of the MVFRL reveals that it requires uninsured and underinsured motorist coverage to be included in policies of insurance delivered or issued for delivery in Pennsylvania. 75 Pa.C.S. § 1731(a). The liability policy for Barbara Hampton's truck was purchased through Refiner's Transport in Delaware for a vehicle licensed and registered in Delaware. There is no provision in the MVFRL requiring

that such a policy include uninsured or underinsured motorist coverage.

The fact that the Peterbilt was often garaged in Pennsylvania does not mandate that the policy of insurance covering the truck include underinsured motorist benefits. The Pennsylvania courts have allowed uninsured and underinsured motorist coverage to be restricted in certain circumstances by the clear and express terms of a policy. In *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994), the Supreme Court held that policy language which excluded coverage for an injury suffered by an insured while driving a vehicle not covered by the policy was a valid limitation of underinsured motorist benefits.

In *Steinbacher v. Page, supra*, 410 Pa.Super. 586, 600 A.2d 608, the plaintiff was injured when her vehicle was struck by a Pontiac Firebird operated by the son of the defendant. The plaintiff sued the defendant's insurance carrier seeking first party benefits under a policy of insurance for which the defendant was the named insured. Although the defendant's son was also an "insured" as defined in the MVFRL, the Superior Court held that there could be no liability on the policy because the Firebird was not a "covered auto" and because the policy clearly limited first party benefits to accidents involving covered autos. *Id.* at 589, 600 A.2d at 610.

In *St. Paul Mercury Ins. Co. v. Corbett, supra*, 428 Pa.Super. 54, 630 A.2d 28, the Superior Court applied a similar analysis in the context of uninsured and underinsured motorist benefits. In that case, the insured, who had purchased a policy of insurance for an antique Roadster, filed a claim for uninsured motorist benefits after he had been injured while traveling in a different vehicle. The Court held that the policy did not extend uninsured or underinsured motorist coverage to the insured unless he was injured while using the Roadster. The Court distinguished between a policy covering a personal use auto, in which uninsured and underinsured motorist coverage applied to the insured while using other than the insured vehicles, and a specialty or limited use policy, in which uninsured or underinsured motorist coverage applied only when

the insured was operating a covered vehicle. *Id.* at 62, 630 A.2d at 32.

Although the Court recognized that the MVFRL mandated uninsured and underinsured motorist coverage for all policies issued in the Commonwealth, it observed that such coverage could be limited to the "circumstances as provided in the clear language of the policy." *Id.* at 59, 630 A.2d at 30. The Court held that the contract language in a policy covering a special use vehicle, which limited the availability of uninsured and underinsured motorist benefits to accidents involving the covered auto, was consistent with the policy behind the MVFRL. *Id.* at 63, 630 A.2d at 32. Compare: *Lastooka v. Aetna Ins. Co.*, 380 Pa.Super. 408, 552 A.2d 254 (1988), *allocatur granted*, 522 Pa. 613, 563 A.2d 498 (1989) (uninsured motorist coverage would apply where the policy did not expressly limit benefits to injuries suffered while operating covered autos and where the policy covered several personal use autos).

In the case sub judice, the commercial trucker's policy was a special use policy which limited coverage to the named insured for a covered vehicle or to others who used the covered vehicle with the permission of the named insured. Read in its entirety the policy limits coverage to injuries relating to the use and operation of the 1980 Peterbilt. The policy does not contemplate coverage where an insured is injured in another context. Thus, even if Hampton were an insured under the terms of his mother's policy, there would be no coverage, as he was not operating a covered auto at the time of his injury.

To exclude coverage under the facts of this case does not violate the legislative intent in enacting the MVFRL. "[T]he MVFRL reflects a heightened concern by the General Assembly toward increasing consumer costs of automobile insurance attributable in part to motorists who ignore the legal requirement that they insure their vehicles." *Windrim v. Nationwide Ins. Co., supra,* 537 Pa. at 133, 641 A.2d at 1156. Moreover, the MVFRL was never intended to apply in a manner that would allow individuals and family members who

owned several vehicles to purchase coverage for only one vehicle and receive uninsured or underinsured motorist benefits while operating a vehicle which was not insured. *Id.* 537 Pa. at 136, 641 A.2d at 1158.

Judgment affirmed.

OLSZEWSKI, J., did not participate in the consideration or decision of this appeal.