employer where alleging a violation of company policy).

### III. *Summary Offenses*

 Finally, Rox Coal submits that, pursuant to section 301(a) of the Act, 77 P.S. § 431, "no compensation shall be paid when the injury or death is intentionally self-inflicted, or is caused by the employe's violation of law." Rox Coal submits that the police accident report established that Decedent committed multiple violations of law: (1) careless driving in violation of 75 Pa.C.S. § 3714; (2) driving on the wrong side of the road in violation of 75 Pa.C.S. § 3301; (3) driving at a speed greater than reasonable and prudent under the conditions in violation of 75 Pa.C.S. § 3361; and (4) failure to use a restraint system in violation of 75 Pa.C.S. § 4581. However, as we have determined that the WCAB properly rejected consideration of the police accident report, there is no evidence on the Record of Decedent's alleged violations of law and, accordingly, this issue is rendered moot.

### *CONCLUSION*

In accordance with the foregoing discussion, we affirm the Order of the Commonwealth Court upholding the grant by the WCAB of fatal claim benefits to Snizaski and her children.

NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant,

v.

James W. WEST, Sammie J. Neely and Allstate Insurance Company, Appellees.

Superior Court of Pennsylvania.

Argued June 19, 2002.

Filed Aug. 30, 2002.

Kevin Rauch, Pittsburgh, for appellant.

Cynthia M. Danel, Pittsburgh, for West, appellee. (Did not argue.)

Kathleen Smith-Delach, Washington, for Neely and Allstate, for appellee.

BEFORE: JOHNSON, JOYCE and HESTER, JJ.

JOYCE, J.

¶ 1 Appellant, Nationwide Mutual Insurance Company (Nationwide) appeals from the order granting summary judgment in favor of James West, Sammie Neely, and Allstate Insurance Company (collectively Appellees). Upon review, we affirm.

¶ 2 The underlying facts of the instant matter are not in dispute. On October 25, 1995, James West, a Pennsylvania resident, was a passenger in a vehicle owned and operated by Sammie Neely, an Ohio resident. Mr. Neely's vehicle was registered in Ohio and he had a policy of insurance issued in the State of Ohio through Allstate Insurance Company. Mr. Neely stopped his vehicle on the side of a roadway in Cumberland Township, Greene County, Pennsylvania, and was subsequently struck by a vehicle driven by Randy Slaughter. The collision caused injury to Mr. West.

¶ 3 Mr. West filed suit against Mr. Neely and Mr. Slaughter in the Court of Common Pleas of Greene County to recover damages he sustained as a result of the collision. Mr. West negotiated a settle-

ment of this suit, and settled with Mr. Slaughter and his insurer, State Farm Insurance Company, for $17,000 on September 15, 1998. Mr. Slaughter's policy of insurance with State Farm Insurance Company had a liability limit of $25,000.

¶ 4 Subsequent to this settlement, Mr. West submitted claims for underinsured benefits to Allstate, as the insurer for Mr. Neely, and to Nationwide, since Mr. West owned two vehicles insured by a policy with Nationwide in Pennsylvania. Mr. West's policy of insurance with Nationwide was issued in Pennsylvania, and it provided for underinsured motorist benefits up to $25,000 per person and $50,000 per occurrence. As stated above, Mr. Neely has a policy with Allstate that was issued in Ohio, and it provided for underinsured motorist benefits up to $50,000. Mr. West subsequently dropped his claim against Allstate.

¶ 5 Nationwide denied Mr. West's claims and argued that the Nationwide coverage was excess, and Mr. Neely's policy with Allstate was primary pursuant to the Nationwide policy and the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL). On November 16, 2000, Nationwide filed a declaratory judgment action seeking a declaration that Allstate, not Nationwide, was the primary underinsured motorist benefits carrier. Appellees answered and averred that Nationwide was in fact the primary carrier. At the conclusion of discovery, cross-motions for summary judgment were filed. On November 30, 2001, the Honorable William Nalitz filed an order and opinion granting summary judgment in favor of Appellees, finding that there is no conflict of laws and that Nationwide is the primary underinsured motorist benefits carrier. Nationwide timely filed its notice of appeal on December 27, 2001.

¶ 6 Nationwide has raised the following issues for our consideration:

I. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION IN DETERMINING THAT PENNSYLVANIA LAW WAS NOT APPLICABLE TO MR. WEST'S RECOVERY OF UIM [UNDERINSURED MOTORIST] BENEFITS BECAUSE THERE WAS NO TRUE CONFLICT BETWEEN PENNSYLVANIA AND OHIO LAW.

II. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW OR ABUSED ITS DISCRETION IN DETERMINING, PURSUANT TO A CONFLICT OF LAWS ANALYSIS, THAT OHIO HAS AN INTEREST IN THE OUTCOME OF THIS CASE OVER AND ABOVE THAT OF PENNSYLVANIA.

Brief for Nationwide, at 4. We will address these questions concurrently, as our discussion necessarily involves a disposition of both issues.

■ ¶ 7 Our scope and standard of review are set forth below.

In examining this matter, as with all summary judgment cases, we must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. In order to withstand a motion for summary judgment, a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Finally, we stress that summary judgment will be granted only in those cases which are clear and free

from doubt. Our scope of review is plenary.

*Washington v. Baxter,* 553 Pa. 434, 441, 719 A.2d 733, 737 (1998) (citations and quotation marks omitted). Our court will reverse a trial court's grant of summary judgment only upon an abuse of discretion or error of law. *Murphy v. Duquesne University of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001). With these principles in mind, we will proceed with our analysis of Nationwide's claims of error.

■ ¶ 8 Under a conflict of law analysis, this Court must begin by first determining if there is in fact a conflict and whether the laws of the competing states actually differ. *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695 (Pa.Super.2000). Here we have statutes regarding uninsured (UM) and underinsured (UIM) motorist coverage in both states, but while Pennsylvania provides for priority of coverage, Ohio law is silent.

75 Pa.C.S.A. § 1731.

**Availability, scope and amount of coverage**

(a) Mandatory offering.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S.A. § 1733.

**Priority of recovery**

(a) General rule.—Where multiple policies apply, payment shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured. OHIO.REV.CODE.ANN. § 3937.18

**UNINSURED AND UNDERINSURED MOTORIST COVERAGE**

(A) Any policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state that insures against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, may, but is not required to, include uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages.

. . .

(C) If underinsured motorist coverage is included in a policy of insurance, the underinsured motorist coverage shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the underinsured motorist coverage. Underinsured motorist coverage in this state is not and shall not be excess coverage to other applicable liability coverages, and shall only provide the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable to the insured were uninsured at the time of the accident. The policy limits of the underinsured motor-

ist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured. For purposes of underinsured motorist coverage, an "underinsured motorist" does not include the owner or operator of a motor vehicle that has applicable liability coverage in the policy under which the underinsured motorist coverage is provided.

■ ¶ 9 The question then becomes whether an express statutory mandate in Pennsylvania can be in conflict with silence in Ohio. We hold that in this instance, there is no conflict. The Pennsylvania and Ohio statutes both provide for UM/UIM coverage, however, Pennsylvania law expresses priority of coverage. The fact that Ohio law is silent on priority does not mean that Ohio law conflicts with Pennsylvania law, it merely means that priority in Pennsylvania is statutory while priority in Ohio is left to the agreement of the parties. Furthermore, the purpose of this portion of the Pennsylvania MVFRL relating to UM/UIM coverage (75 Pa.C.S.A. §§ 1731 – 1738) is not abrogated by Ohio's silence. While case law prescribes that the Pennsylvania MVFRL is to be liberally construed, the purpose of underinsured motorist insurance was designed to **protect** an insured from a negligent driver of another vehicle who causes injury to the insured, but through no fault of the insured, lacks adequate insurance coverage to compensate the insured for the injuries that were sustained. *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (1998) (emphasis supplied). Here, there is no question that Mr. West is a covered insured under a policy of insurance, and since Mr. West is "protected," the question is only one of priority of recovery. We agree with the trial court that there is no conflict of law.

■ ¶ 10 In contract disputes, Pennsylvania courts generally honor the parties' choice of law provisions. *See Smith v. Commonwealth Nat. Bank,* 384 Pa.Super. 65, 557 A.2d 775 (Pa.Super.1989). It is undisputed that Mr. West is an insured pursuant to Mr. Neely's contract with Allstate, and it is further undisputed that Mr. West is an insured under his contract with Nationwide.

■ ¶ 11 Mr. Neely and Allstate bargained for the coverage provided in the policy in reliance on Ohio law. The reliance on Ohio law is evident in that the policy terms at issue are not in Allstate's standard policy, but instead are found in the "Ohio Amendment of Policy Provisions." *See* Allstate Policy Ohio Amendments, at 1– 8. We find this to be a clear choice of Ohio law for purposes of our discussion on the UM/UIM coverages. Accordingly, we find that Mr. Neely and Allstate chose Ohio law, and Mr. West and Nationwide chose Pennsylvania law.

■ ¶ 12 It becomes apparent that there is a conflict, but it is not a conflict of laws. Rather, we have a situation where a term of a contract issued in Ohio conflicts with Pennsylvania law, in addition to Ohio law being silent on the issue of priority. All of the parties agree that the Allstate policy is enforceable under Ohio law. As stated above, Pennsylvania pays deference to contracts and the intent of the parties. The challenge before us is reconciling the choice of law with respect to the two contracts and the interrelationship of the laws of Ohio and Pennsylvania.

¶ 13 Nationwide clearly had an expectation to be bound by Pennsylvania law in its dealings with Mr. West pursuant to his insurance policy. Conversely, Mr. Neely had an expectation that his policy was issued pursuant to Ohio law. By its terms, the MVFRL applies only to policies

delivered or issued for delivery in Pennsylvania, with respect to any motor vehicle registered or principally garaged in Pennsylvania. *Bamber v. Lumbermens Mutual Casualty Co.*, 451 Pa.Super. 548, 680 A.2d 901 (1996); 75 Pa.C.S.A. § 1731(a). The Allstate policy was clearly not issued in Pennsylvania, nor does it have any relationship with any vehicle garaged in Pennsylvania.

¶ 14 Therefore, we have multiple policies that are **implicated**, but the question of whether or not they **apply** is a separate inquiry. The Allstate policy provides for priority of recovery and states that Allstate coverage is excess to other coverage. This is purely a contract proviso since, as we have stated, Ohio law is silent as to priority. Ohio Revised Code § 3937.18. Conversely, Pennsylvania law is clear that in the UIM forum, an insured must first look to the policy covering a vehicle involved in the accident. 75 Pa.C.S.A. § 1733. This case presents a unique example of a situation where there are two competing contracts of insurance, where the rights of recovery of an insured depend on the relationship of the contracts, both with each other and with state laws.

¶ 15 Under the flexible conflicts methodology approach to insurance contract cases, which was set forth by our Supreme Court in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the court must apply the law of the state having the most significant contacts or relationships with the contract and not the underlying tort. *Caputo v. Allstate Insurance Co.*, 344 Pa.Super. 1, 495 A.2d 959 (1985).

¶ 16 Pursuant to *Nationwide Mutual Insurance Co. v. Walter*, 290 Pa.Super. 129, 434 A.2d 164 (1981), the contacts analysis is different depending on whether the underlying issue is tort or contract. The issue in the instant case is the coverage provided under policies of insurance and thus, clearly a contract issue. Accordingly, it is the contacts as they relate to the insurance policy and not the automobile collision. *See id.*

¶ 17 We have absolutely no hesitation in concluding that the state of Ohio has the most significant contacts with Mr. Neely's policy with Allstate. The policy was executed and delivered in Ohio; Mr. Neely was domiciled in Ohio; and, the truck for which he entered into the contract of insurance with Allstate was registered in Ohio. The only relationship that Pennsylvania had with the contract was that it was the location of the tort.

¶ 18 Were we to apply Pennsylvania law to the insurance policies implicated in this matter, it is evident that Mr. West must look to Allstate first because Allstate insured a vehicle involved in the accident. 75 Pa.C.S.A. § 1733. However, since the Pennsylvania statute at issue states that the Pennsylvania MVFRL applies only to cars garaged in Pennsylvania, and while implicated, Mr. Neely's policy does not apply. *See Bamber, supra;* 75 Pa.C.S.A. § 1731. Mr. Neely's automobile was clearly not garaged in Pennsylvania, nor was his policy of insurance issued in Pennsylvania.

¶ 19 Nationwide asks this Court to rewrite the Allstate contract to conform with Pennsylvania law. However, this Court has previously stated that "[n]owhere in the MVFRL is there any provision requiring a non-resident to have greater uninsured motorist benefits on his vehicle when he comes into the Commonwealth, nor is there any MVFRL provision requiring a non-resident to conform to the uninsured motorist provisions of the Commonwealth." *United Services Automobile Association v. Shears,* 692 A.2d 161 (Pa.Super.1997) (citing *Insurance Co.*

*of Pennsylvania v. Hampton,* 441 Pa.Super. 382, 657 A.2d 976, *allowance of appeal denied,* 542 Pa. 647, 666 A.2d 1056 (1995)). We find this pronouncement equally compelling in the instant situation dealing with underinsured motorist coverage, and as such we decline to create a rule where out-of-state motorists will have their underinsured motorists coverage (if they have it all) rewritten when travelling through our Commonwealth.

¶ 20 Accordingly, we find no reason upon which to disturb the learned trial court's disposition of this matter. The order granting summary judgment in favor of Appellees is hereby affirmed.

¶ 21 Order affirmed.